Kelsey, you may proceed. Good morning, Your Honors. May it please the Court, my name is Ji-Hsien Lee, and I represent petitioners. This is a consolidation of two cases. I would like to address petitioner's asylum claim first. In denying petitioner's asylum application, the BIA relied exclusively upon its adverse credibility determination. In adopting the IJ's adverse credibility determination, the BIA relied upon the IJ's perceived inconsistencies between petitioner's statements and their supporting evidence, namely the fine receipt. There are two inconsistencies identified by the IJ. The first one relates to the reason why petitioners were fined. Petitioners testified and also they stated in their asylum application they were fined for early marriage, while the fine form receipt reflects that they were fined for early birth. This inconsistency was brought to the female petitioner's attention, and the female petitioner explained that there's no separate form for early marriage. And also she was told by the birth control officials that early marriage would lead to early birth. Mr. Lee, is it your position that we are limited to reviewing the BIA's decision? Or can we look at both the IJ's articulation of the reasons for the adverse credibility determination, as well as what the board said in reviewing them? In this case, Your Honor, I believe that the court's review is limited to the BIA's decision. Why is that where the BIA essentially applied a clearly erroneous standard of review in their decision and found no clear error under the clearly erroneous standard? That says to me that they are doing what we as appellate courts do all the time in reviewing the justification for a fact finder's decision. Yes, sir. In this case, if you compare the IJ's decision with the BIA's decision, I think it's clear the BIA conducted its own independent analysis of the record. Well, I'm not sure I agree. I laid the two side by side. I come up with eight different grounds that the immigration judge cited in support of the adverse credibility determination, and then I look and I see that the BIA specifically talked about three of the eight, but it did so in applying the clearly erroneous standard. So I'm wondering if you can help me determine what it is that we're reviewing here because it seems to me it's fair game to look at all eight, even though the board further articulated or talked more about three of the eight. Yes, sir. I'll give the court one example. In the IJ's decision, the IJ found the positions are not credible. One reason is that they could have waited a little bit longer for the female petitioner to reach the legal age to get married. So in our brief to the BIA, we argued that the IJ was essentially speculating, relying on her speculation on the conjecture to cause doubt over petitioner's testimony, over petitioner's credibility. So that's not permissible under the discourse of the jurisprudence. Can you help me then with a per-I'm looking at-do you have the BIA decision? Yes, sir. I'm looking specifically at excerpts of record four, and the full paragraph, I guess it's the last paragraph on the bottom of page two, in which the court says these discrepancies cited by the immigration judge are supported by the record and support the immigration judge's overall negative credibility finding. That suggests to me that they were looking at all eight grounds, even though they chose to expound or expound four of them that they found particularly convincing. If that was the case, Your Honor, then the BIA committed an error in just ignoring petitioner's explanation on appeal as to, for example, the discrepancy that I just pointed out, the IJ relied upon her speculation to discredit petitioners. Petitioners argued before the BIA that this is not permissible under the Ninth Circuit case law. So this is a post-2005 Real ID Act case, is it not? Yes, Your Honor. And so that statute, which overturned a substantial amount of pre-2005 Ninth Circuit law, directs both the BIA and the courts of appeal on review to look at the totality of the circumstances in evaluating an adverse credibility determination, which as I understand the statute means that we look at all of the grounds, the total circumstances that the immigration judge articulated in determining whether or not substantial evidence supports the adverse credibility finding. Isn't that what the BIA did here? Yes, the BIA did that, but the BIA come up with, as you just pointed out, the three grounds to discredit the petitioner. But it's not limited. The problem I think we're having is that you want us to limit the grounds to the three that the BIA specifically expanded upon, but the statute says that the board looks to the totality of the circumstances in weighing the adverse credibility determination, and then you've got to convince us on appeal that substantial evidence compels the opposite result in looking at the totality of the circumstances. That's a pretty tough burden to me. Yes, Your Honor. But the law is clear in saying that if the BIA conducts its own independent analysis and then the review should be limited to the BIA's decision. But if that was the case, then what's the purpose of the board saying in the second paragraph on excerpt of Record 3,  made by the immigration judge under a clearly erroneous standard? It seems to me they're doing exactly what the REAL ID Act requires them to do. Yes, Your Honor, but the BIA, just by looking at the BIA, this is clear, the BIA. The reason why the BIA did not overturn the IG's adverse credibility determination is because of the inconsistencies noted specifically pointed out by the BIA in its decision, not all of the reasons provided by the IG. Counsel, can I? Yes. My colleague has raised the primary issue. I want to raise a collateral issue. As you well know, when credibility is at issue, many times either the petitioner or the court will ask the petitioner to provide corroborative evidence. In this case, you had a female who was not listed in the original asylum application who was put forward to verify some of the information that had been provided. The record shows that she was inconsistent, couldn't explain anything, didn't really seem to know much of anything. Indeed, the effect of her involvement was presumably almost entirely negative. How are we to weigh her testimony and the fact that she was put forward as a corroborative, if you will, witness of your client's credibility? The way that I read BIA's decision, the BIA did discuss the witness testimony and saying that they declined to accord a credible corroborative weight. So that is clear to me that the BIA discussed the witness testimony in the context of burden or proof instead of the credibility. But to the point that she was theoretically going to buttress the testimony of your client, and in fact it was just the opposite. It tended to undercut what testimony your client gave. And I guess my question to you is, as part of the totality of the circumstances that my colleague referred to, don't we also have to consider the fact that the BIA found that the allegedly corroborating witness was anything but corroborative and it went to further undermine your client's testimony? Well, Your Honor, I believe the BIA, this actually involves two steps. The first step is the credibility. So if the respondent, let's assume the respondent, the petitioners were found to be credible, and then the second question would be whether or not they have carried the burden of proof. And then the BIA can look at the witness testimony and say because the petitioners were not corroborated by any corroborative evidence and then they failed to carry the burden of proof. So I think it would be unreasonable for the BIA to rely upon the witness testimony to discredit the petitioner's testimony. What's the point of having a corroborative witness if the BIA can't look at it? Yeah, the BIA did look at it. I understand it, but I thought you said that the BIA was in effect limited to what your client said and then independently is going to do something with the corroborative witness, and I don't understand why that way. I think there are two different things. If the BIA found the witness testimony to be contradictory to the petitioner's testimony, then the BIA can rely on the witness testimony to find adverse credibility determination. And did not the BIA do just that in this case? Pardon me? Didn't the BIA do just that? No, Your Honor, the BIA just saying that she was not credible, so therefore her testimony cannot support corroborated petitioner's testimony. But if the IJ made a determination that your client was not credible for a number of reasons and the corroborative witness did not buttress that, doesn't the IJ's decision stand? Yes, but if we look at the IJ's decision, the IJ did not come up with one single instance of inconsistency between the witness testimony and the petitioner's testimony. Well, but the board, look at ER-4 again, that paragraph that I referred to earlier, talking about the witness being the sister, provided discrepant testimony regarding the female respondent's age, the minimum marital age for a female, and how many months short the female respondent was to the minimum marital age. And then it goes on to describe other aspects of the sister's testimony that undermined the burden of proof that the petitioner has to prove past persecution. But the minimum age, the age discrepancy has been explained by petitioners in their brief to the VIH because there are two ways of counting age in China. There's a lunar calendar, there's a western calendar. Counsel, with respect, you seem to be saying that if your client is inconsistent but offers an explanation that would basically make everything just fine, that the IJ and the BIA are obligated to credit that. That's not the law, is it? Yeah, that's not the law, but the BIA at least to have to address the petitioner's explanation before they reject their explanation to reach an adverse credibility determination. But in this case the BIA just simply turned a blind eye to What do you make of what my colleague said to you, that in this case the BIA per ER-3 reviewed the entire record? It may have focused on three of the instances of lack of credibility, but it apparently read the whole record. And as my colleague has noted, post the Real ID Act, they look at the totality of the circumstances. It seems, with respect, that you are just cherry-picking a few things that you think that inconsistencies are really minor and we're supposed to ignore the rest of them. But in fact, the IJ made a determination, gave your client an opportunity to corroborate what was being said. She was unable to do that, which leaves the IJ's decision, does it not? Well, Your Honor, actually it's the BIA's. I know that's your position, yeah. Yeah, for example, the example that I just pointed out, the IJ relied upon speculation to disclose. The BIA did not address the petitioner's explanation provided to the BIA on their appeal at all. I'm not using my time. Thank you, Your Honor. Your time has expired, counsel. Thank you very much. We will hear from the government. May it please the Court, Kate Silberman-Balaban for the government. I wanted to start with the scope of review question because I think that's at the heart of the adverse credibility determination. As Your Honor has rightly pointed out, the standard of review is substantial evidence, and the proper scope of review here is both agency decisions. The Board affirmed the decision of the IJ, and I think there's a very simple explanation regarding why the Board focused on the three points that it did. There were a number of different bases for the adverse credibility finding. But in petitioner's brief on appeal to the Board, they cherry-picked and only discussed a few. They discussed what they perceived to be the ones that were the weakest. So the Board followed up on that and addressed those in their opinion. But there's a number of different bases for the adverse credibility determination, and all of them, since the Board affirmed the decision of the IJ and considered all of them in making its determination that there was no clear error, all of those are now within the scope of review for this Court. The two key problems identified by the IJ, neither of which were addressed in either a petitioner's appeal brief to the Board or their brief to this Court. The first is the statement from Ms. Hay, the fact that there was no statement from Ms. Hay attached to the asylum application, despite the fact that the asylum claim rested on her alleged forced abortion. That's so important for the trier of fact to have had that statement and so significant that it was missing, because it would give the IJ a chance to test the live testimony against a source of cross-examination. That was not there. The IJ gave Ms. Hay a chance to explain why she didn't attach a statement and found her explanation for the omission to be not convincing. Second key point that the IJ identified was that Ms. Guo, the sister of the applicant, Mr. Guo, who was called to testify to corroborate their claims, was never mentioned. She was never listed in the asylum application. And this is just a very, very key omission. There's a reason why siblings are asked for on the asylum application. She wasn't listed. Then she was called to testify. The IJ found this extremely problematic. Again, these are two significant bases upon which the adverse credibility determination rests. There were additional inconsistencies regarding the receipt, the amount of the fine, and what the fine was for. All of these, in isolation, may not look entirely convincing, but it's the, as Your Honor has rightly pointed out, under the Real ID Act, it's the totality of the circumstances. And there's ample evidence in the record, therefore, to find that the witnesses and the testimony, the record evidence, is not credible. The second case, which we haven't had a chance to address here, the motion to reopen, was filed clearly late. There's no question about that. And the standard for review for the denial of the motion to reopen is an abuse of discretion, so it's an easier standard for you to uphold. And clearly it should be upheld in this case, because in order to make out an argument for a late motion to reopen, petitioners had to show that there was a prima facie case. They never even alleged there was a prima facie case. On that basis alone, it was not an abuse of discretion. But they do allege changed conditions. They alleged, in order to establish changed country conditions, petitioners would have had to establish what the old country conditions were, which they don't ever allege. They do refer to a 2007 State Department report. That report was not in the motion to reopen record. It was in the record for the original asylum case. And, Your Honor, you may say, oh, well, if it was in the original record, then the agency should be able to find it and rely upon it. But, in fact, this is a problem. In the motion, they never point to the 2007 report. So it's a little bit much to ask the board to not only go back to the original record, which isn't applicable in this case, find the report and make the argument for the alien that this was the evidence offered of past country conditions. So, in addition, they need to establish past country conditions. They need to establish current country conditions. They need to show that there's been a change in country conditions and that where they didn't have a claim before, they might have one now. Without past country conditions, they can't establish that. In addition, their only evidence of new country conditions is this unsworn, handwritten, not authenticated single instance of this woman who returned from allegedly from Great Britain and faced forced sterilization when she returned. The board was justified in concluding that this was not change in country conditions such that might excuse the late filed motion. If there's no other questions. No further questions. Thank you, counsel. The case just argued will be submitted for decision. And we'll hear argument next in Pacific Radiation versus Doe and the Queens Medical Center.
judges: O'scannlain, Tallman, Smith